**UNITED STATES of America**

v.

**Edward I. ZIVE, Defendant.**

**No. 68 Cr. 813.**

United States District Court,
S. D. New York.

April 9, 1970.

See also, D.C., 299 F.Supp. 1273.

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, by John Wing, Asst. U. S. Atty.

William Esbitt, New York City, for defendant.

OPINION

TYLER, District Judge.

Defendant was tried to a jury on a two count indictment charging bribery and corruption of a revenue agent. 18 U.S.C. § 201(b) and (f). The jury found him guilty on both counts. Defendant now moves for a judgment of acquittal under Rule 29(c), Fed.R.Cr.P.,[1] and, in the event that motion is denied, under Rule 33, Fed.R.Cr.P.,[2] for a new trial.

These motions are based on the theory that under the applicable tests, the evidence produced on Zive's defenses of entrapment and of mental capacity insufficient to conform his actions to the requirements of law was weighty enough to require acquittal or at least a new trial.

Defendant makes his strongest argument in attacking the government's proof of his mental capacity on September 17, 1968, the time of the alleged offense. At trial, defendant produced Dr. Carlos Dalmau, a qualified, reputable psychiatrist, who had treated defendant intensively (seeing him approximately twice a week) for the 2½ year immediately preceding the events which gave rise to the indictment. Based on his expertise in psychiatry and his long and close knowledge of defendant, Dr. Dalmau testified that he was certain that at the time of the events defendant was not able to conform his conduct to the requirements of law.

In order to meet its burden of proving that defendant did have sufficient capacity to conform his actions to the requirements of law, the government produced testimony from Dr. David Abrahamsen, also a qualified, reputable psychiatrist. He saw defendant twice for a total period of 2–2½ hours in late 1969;

1. "If a verdict of guilty is returned the court may on such motion [for judgment of acquittal] set aside the verdict and enter judgment of acquittal" Rule 29 (c), Fed.R.Cr.P.

2. "The court on motion of a defendant may grant a new trial to him if required in the interest of justice" Rule 33, Fed. R.Cr.P.

he also examined various papers touching on defendant and his behavior during the events at issue and talked to Dr. Dalmau about defendant. It was Dr. Abrahamsen's opinion that at the time of the alleged offense defendant did have the requisite mental capacity to conform his actions to the requirements of law.

During a long cross-examination, made unnecessarily protracted and circuitous by Dr. Abrahamsen's unfortunate tendency not to give short and simple answers to the questions put him, it appeared that Dr. Abrahamsen agreed that, with further analysis, he could have learned more of the patient and that while he disagreed with Dr. Dalmau as to the degree of the defendant's symptoms, they were largely in agreement as to the kind. Nevertheless, Dr. Abrahamsen was not fundamentally shaken from his original opinion of defendant's mental capacities, nor, despite Dr. Abrahamsen's somewhat argumentative performance on the witness stand, was his testimony sufficiently self-contradictory or unfounded to be inherently incredible.

The jury was thus faced with a sharp choice between the opinions of the two psychiatrists. They obviously chose Dr. Abrahamsen's opinion over that of Dr. Dalmau.[3] The question for the court is whether there is a standard under either Rule 33 or Rule 29(c) by which the court should set aside the jury's verdict and grant an acquittal or a new trial.

The most lenient standards for setting aside a verdict are those propounded under the "interest of justice" rubric of Rule 33 which spell out the test for granting a new trial in a criminal case. The fullest explication of the lenient reading of Rule 33 is set forth in United States v. Robinson, 71 F.Supp. 9, 10 (D. D.C.1947), in which Judge Holtzoff held that in a motion for a new trial,

"the Court may weigh the evidence and consider the credibility of witnesses. If the Court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Naturally, this authority should be exercised sparingly and with caution. It should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."

Read as a whole, this passage establishes at least a minimum standard by which, if the evidence preponderates heavily against the verdict, the court may set the verdict aside. It is somewhat unclear whether Judge Holtzoff felt that weighty preponderance was sufficient or whether there should, in addition, be some further sense of a miscarriage of justice. The position of Judge Holtzoff has been followed in a number of decisions, though the emphasis of the ruling judge has frequently fallen on different phrases in the language of Robinson.[4]

3. There was significant testimony from other witnesses suggesting that in the fall of 1968 defendant was able successfully to operate a scrap metal business. Such evidence certainly did not cut against Dr. Abrahamsen's opinion of defendant.

4. United States v. Hurley, 281 F.Supp. 443, 449 (D.Conn.1968), United States v. McGonigal, 214 F.Supp. 621, 622 (D. Del.1963) ("if the verdict is against the weight of the evidence a new trial must be granted"), United States v. Wapnick, 202 F.Supp. 712, 714 (E.D.N.Y.1962), aff'd 315 F.2d 96 (2d Cir.), cert. denied 374 U.S. 829, 83 S.Ct. 1868, 10 L.Ed.2d 1052 (1963) (emphasis on miscarriage of justice), United States v. Wilson, 178

F.Supp. 881, 884 (D.D.C.1959), aff'd 109 U.S.App.D.C. 337, 288 F.2d 121 (1960) (per Holtzoff, J., lengthy verbatim quotation of Robinson), United States v. Beacon Musical Instrument Co., 135 F. Supp. 220, 222 (D.Mass.1955) ("If the verdict is contrary to the weight of the evidence and a miscarriage of justice may have resulted, a new trial may be granted", quoting United States v. Kelly, infra), United States v. Kelly, 119 F. Supp. 217, 220 (D.D.C.1954) (language cited in Beacon Instrument, supra), United States v. Parelius, 83 F.Supp. 617, 622 (D.Haw.1949) (verdict contrary to the weight of the evidence), 2 Wright, Federal Practice and Procedure, §§ 553–556.

The standard of *Robinson* does not hold the field with unquestioned authority. In United States v. Toner, 77 F. Supp. 908, 910 (E.D.Pa.1948), the court considered a motion in the alternative for acquittal or a new trial and held that,

"[i]n considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government; must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of the evidence. [citation omitted] The verdict of the jury must be sustained if there is substantial evidence to support it."

The standard suggested in *Toner* has found support in other decisions.[5] Perhaps the bluntest statement apparently favoring this more stringent standard was made in Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L. Ed. 680 (1942): "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser* was a case on appeal, but since a new trial was ordered for other reasons, one may reasonably assume that standards for reviewing jury verdicts in order to grant a new trial were not distant from the mind of the Court. Moreover, despite the precedents cited in *Robinson*, there is some evidence that this is the older view of the respective duties of judge and jury, though, of course, taken alone, antiquity is not the final touchstone of correctness. Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149, 1157 (1960).

 In this case it is possible to put aside the problem of whether the *Robinson* test or the *Toner* test is the appropriate standard for the interpretation of the first ringing sentence of Rule 33. Even if, *arguendo*, the test of *Robinson* is accepted in its most lenient reading, the defendant in this case cannot win a new trial. Whatever impression Dr. Abrahamsen may have made on the witness stand, his testimony was not incredible and his expertise was unchallenged. Dr. Dalmau may have seemed more convincing to the court, but it cannot be said that the evidence heavily preponderated against accepting the testimony of Dr. Abrahamsen.

 Defendant's second ground for the motion, that the entrapment defense was not sufficiently rebutted by the government, is weaker than the argument on mental capacity. Without extended discussion, the evidence on entrapment was far from preponderating against the verdict of the jury.

Motion denied. It is so ordered.

---

5. United States v. Chas. Pfizer & Co., 281 F.Supp. 837, 839 (S.D.N.Y.1968) (doubts expressed on *Robinson* standard, *Toner* line pointed out), United States v. Pennsylvania Refuse Removal Ass'n, 242 F. Supp. 794, 798 (E.D.Pa.1965), aff'd 357 F.2d 806 (3d Cir.), cert. denied 384 U.S. 961, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966), United States v. Green, 143 F. Supp. 442, 445 (S.D.Ill.), aff'd 246 F.2d 155 (7th Cir.), cert. denied 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957) ("A new trial should not be granted if there is substantial evidence to support the verdict."), United States v. Haynes, 81 F.Supp. 63, 66 (W.D.Pa.1948), see United States v. Nedley, 255 F.2d 350, 352 (3d Cir. 1958).