572 P.2d 453

STATE of Arizona, Appellee,

v.

Tommy Rush FIELDS, Appellant.

No. 1 CA–CR 2451.

Court of Appeals of Arizona,
Division 1,
Department C.

Nov. 30, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Diane M. DeBrosse, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edward C. Voss III, Deputy Public Defender, Phoenix, for appellant.

## OPINION

SCHROEDER, Judge.

Appellant, Tommy Fields, was charged by information with the armed robbery and kidnapping of a Phoenix woman in March, 1975. Following a jury trial, appellant was acquitted on the kidnapping charge but found guilty of the armed robbery offense. A sentence of not less than five years nor more than six years in the Arizona State Prison was imposed. The appellant appeals from his conviction and sentence.

The appellant's primary contention on appeal is that the evidence showed the existence of a legitimate issue of insanity at the time of the offense, and that, because the State did not present any evidence establishing his sanity beyond a reasonable doubt, it failed to meet its burden of proof on this issue. Appellant also claims that the trial court's decision, after appellant had invoked the rule excluding all witnesses, to prohibit his examining psychiatrist from remaining in the courtroom as an investigator during the trial, was a denial of due process and equal protection. Finally, appellant argues that the two verdicts were inconsistent and irreconcilable and that he was, therefore, entitled to an acquittal on the robbery charge.

On March 28, 1975, at approximately 10:00 a. m., the victim was seated in her automobile in front of a post office on East Buckeye Road in Phoenix, Arizona. Appellant appeared, opened the passenger door, and brandished a revolver. He then entered the automobile and instructed the victim to drive away. After a ten minute drive, the appellant instructed the victim to stop the automobile and get out. Appellant then drove away in the victim's automobile and was captured shortly thereafter.

Prior to trial, appellant was examined by two psychiatrists. Based on their reports, the trial court found the appellant competent to stand trial. Appellant timely noticed his insanity defense. Appellant and one psychiatrist, Dr. Otto Bendheim, were the only witnesses called by the defense. The State did not introduce expert medical evidence on the issue of appellant's sanity at the time of the offense. The pivotal issue before us is whether the appellant's testimony or that of Dr. Bendheim constituted sufficient evidence to create a reasonable doubt as to the appellant's sanity at the time of the offense thereby requiring the State to prove the appellant's sanity beyond a reasonable doubt. *State v. Overton*, 114 Ariz. 553, 562 P.2d 726 (1977); *State v. Ortiz*, 114 Ariz. 285, 560 P.2d 803 (1977); *State v. Cooper*, 111 Ariz. 332, 529 P.2d 231 (1974).

Appellant testified that at the time of the offense and for some time prior to the

offense, he had experienced emotional problems and had believed that his life was in danger. He also testified that he had been worried about his relationship with his wife and that, during this period, he had been subject to visions and imaginary voices. Appellant stated that he had previously taken drugs to escape from these problems and that on the evening of April 27, 1975, the night before the offense, he had taken peyote, mescaline, and had smoked a considerable amount of marijuana in order to "get some sleep and get rested and get away from [my problems] . . . ." Appellant also asserted that he had been discharged from the armed forces after having been diagnosed as a paranoid schizophrenic. No medical testimony, however, was introduced by the appellant which substantiated this condition.[1] Appellant contended that he did not remember performing the acts of which he was accused.

■ The State does not argue nor do we believe that a criminal defendant is incapable of establishing a reasonable doubt as to his sanity at the time of the offense through his own testimony at trial. However, to rebut the presumption of a defendant's sanity, which is recognized in all criminal cases, e. g. State v. Sisk, 112 Ariz. 484, 543 P.2d 1113 (1976); State v. Cooper, 111 Ariz. 332, 529 P.2d 231 (1974), the defendant must introduce evidence which shows a state of mind which prohibited him from knowing the nature and quality of his act or that the act was wrong. E. g. State v. Begay, 110 Ariz. 200, 516 P.2d 573 (1973). This defendant's mental condition at the time he committed this offense was influenced by drugs. In State v. Cooper, supra, the Arizona Supreme Court distinguished between an "existing state of mental illness," which was being caused by the excessive or prolonged use of drugs, and a "temporary episode of mental incapacity caused

by the voluntary use of liquor or drugs." The court held that an insanity defense was available only in the former situation and not in the latter. Accord, State v. Valenzuela, 114 Ariz. 81, 559 P.2d 201 (1977).

■ Appellant's testimony failed to establish that his mental state at the time he committed the armed robbery was the result of an existing mental incapacity caused by an extended use of drugs. Instead, appellant's testimony indicated that his mental condition was brought about by his use of drugs the day before the offense. The facts of this case, as related by appellant do not constitute sufficient evidence of insanity to rebut the presumption of sanity. See Wilson v. United States, 109 U.S.App.D.C. 337, 288 F.2d 121 (1960).

■ The only other evidence presented by the defense at the trial on the issue of appellant's sanity was the testimony of Dr. Bendheim. Dr. Bendheim's competency report, which was based on an interview with appellant, on police records prepared immediately after the incident, and on telephone conversations with the prosecutor and the defense attorney, stated in part:

"Mental Status:

The defendant convincingly describes periods during the last few years when he was very heavily under the influence of hallucinogenic drugs, at which time he experienced psychotic manifestations: terrible visions, terrible voices, bizarre, mysterious and magical influences, etc. etc.

All this has completely disappeared since he has been abstinent from this type of drugs following his arrest. At the present time there is no evidence of psychotic behavior, of hallucinations, delusions, inappropriateness, etc." (Emphasis added)

---

1. Appellant's testimony concerning his mental state at the time of his discharge from the armed forces, however, was not consistent. Appellant also stated that the doctors

"discharged me for mental reasons, because—the doctor felt I was not medically unfit, but I had mental problems, emotional problems. And they discharged me for the simple purpose of taking care of those and eliminating those problems, you know. And I had—I could have reenlisted in six months, something like that, but I never did go back." (Emphasis added)

322

At trial, Dr. Bendheim stated his opinion that, on the day of the offense, the appellant's awareness was diminished and his judgment was impaired. He testified that his opinion was based on the appellant's history, as furnished by him, of being heavily under the influence of mind changing drugs at that time. Dr. Bendheim also reiterated his opinion that, at the time of his examination, the appellant was competent.

Appellant argues that he introduced sufficient evidence creating a reasonable doubt as to his sanity. We disagree. Dr. Bendheim's competency report and his testimony during trial showed that appellant's mental condition at the time of the offense was voluntarily induced by drugs and disappeared when the appellant stopped using drugs. His opinion of appellant's mental state at the time of the offense could not, under present Arizona law, rebut the presumption of sanity. *State v. Cooper, supra.*

 Appellant next claims that the trial court violated his constitutional rights by ruling that Dr. Bendheim could not remain in court during the trial as an investigator for the defense and also testify as an expert witness. Appellant precipitated this situation by invoking Arizona Rules of Criminal Procedure 9.3(a) which requires the court, on motion by either party, to exclude prospective witnesses from the courtroom. Appellant argues that the lower court improperly excluded Dr. Bendheim because he was an investigator within the meaning of Rule 9.3(d). Rule 9.3(d) provides:

"If an exclusion order is entered, both the defendant and the prosecutor shall nevertheless be entitled to the presence of one investigator at counsel table."

The State argues, and we agree, that Dr. Bendheim was not an investigator as contemplated by Rule 9.3(d). The purpose of allowing an investigator to remain in the courtroom after the court has excluded all prospective witnesses is to allow such a person to call to counsel's attention factual matters of which he might not be aware. Ariz.R.Crim.P. 9.3(d), Comment. Although we are not willing to state that a physician can never qualify as an investigator under this rule, we believe Dr. Bendheim was not an investigator under the facts of this case. The only factual matters known by Dr. Bendheim concerned appellant's mental condition at the time of the offense, and those had been related to him by the appellant who was present throughout the trial. Therefore, Dr. Bendheim could provide little assistance to counsel in the role of an investigator.

 Appellant's final argument that the verdicts were inconsistent is without merit. Appellant's reliance on *State v. Laney*, 78 Ariz. 19, 274 P.2d 838 (1954) is misplaced. *Laney* was overruled by the Supreme Court in *State v. Zakhar*, 105 Ariz. 31, 459 P.2d 83 (1969). Consistency between verdicts on several counts of an indictment is unnecessary. *State v. Zakhar, supra; State v. Lippard*, 26 Ariz.App. 417, 549 P.2d 197 (1976).

Affirmed.

OGG, P. J., Department C, and DONOFRIO, J., concur.