NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MASON GARRETT RILEY, *Appellant.*

No. 1 CA-CR 18-0370
FILED 4-9-2019

Appeal from the Superior Court in Coconino County
No. S0300CR201700421
The Honorable Jacqueline Hatch, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

J O N E S, Judge:

¶1        Mason Riley appeals his conviction and sentence for aggravated assault.[1]  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        While hosting a gathering for several friends and family members in her home, M.W. had a verbal altercation with Riley.[2]  After their heated exchange, Riley left, but later returned and knocked on the front door.  When M.W. opened the door, Riley hit her in the face and abdomen with a sizable tree branch and then fled.  M.W. called 9-1-1, requesting emergency assistance and reporting that Riley had attacked her.

¶3        Meanwhile, M.W.'s brother, K.W., arrived at M.W.'s home and heard a guest yell, "He hit her."  Rushing inside, K.W. saw that M.W.'s face was swollen.  After M.W. told him that Riley had hit her with a tree branch, K.W. went outside and located Riley, who was standing in the street, wielding a knife.  Angry, but also worried that Riley might stab him, K.W. maintained a safe distance from Riley until law enforcement arrived.

¶4        When an officer responded to the scene, he saw Riley, K.W., and another man standing in the street near M.W.'s home.  While the officer parked and exited his patrol car, the men separated, and one man pointed at Riley and said, "He's got a knife."

¶5        Alerted by this warning, the officer drew his weapon and repeatedly commanded Riley to "get on the ground."  Ignoring the officer's

---

[1]        Riley was also convicted of resisting arrest but does not challenge that conviction or sentence on appeal.

[2]        We view the facts in the light most favorable to sustaining the verdict.  *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

orders, Riley remained standing. Eventually, Riley dropped the knife onto the pavement and sat on a curb.

¶6        The officer then placed Riley in a prone position and handcuffed him. As he did so, Riley told the officer that he had the "wrong person" and asked, "Where did he go?" Once the officer returned Riley to a standing position, Riley further stated that he had merely protected himself. In response to this statement, the officer invited Riley to "tell [him] what happened." Sitting down on the curb again, Riley told the officer that "people" had fought him "all day." When the officer pressed him for additional information, Riley declined, stating he would not "snitch."

¶7        Shortly thereafter, M.W. was transported to a nearby hospital for treatment. While medical personnel attended to her injuries, M.W. reported she "heard a knock on [her] door," and when she answered it, her "boyfriend's brother" had hit her "with a tree branch."

¶8        The State charged Riley with two counts of aggravated assault (Count 1 — victim M.W., and Count 2 — victim K.W.) and one count of resisting arrest. The State also alleged aggravating circumstances.

¶9        At trial, M.W. testified that she was impaired by both alcohol and drugs at the time of the underlying events and therefore had little memory of what transpired. She vaguely recalled having received medical treatment after being hit with a tree branch but testified that she could not remember who hit her and denied calling 9-1-1 after the attack. When asked about her relationship with Riley, M.W. testified that at the time of the incident she was in a romantic relationship with both Riley and his brother. She also testified she was currently in a relationship with Riley and did not want "anything bad" to happen to him.

¶10        Taking the stand in his own defense, Riley testified that on the day of the incident, M.W. had "flick[ed]" "prongs" (a large steak or barbecue fork with two tines) at him while she was cooking in the kitchen. Later, she joined him outside, still holding the prongs, and made "jabbing motions" toward his left side. Upset that M.W. was "mocking" him, Riley testified that he hit her face, which caused her to fall into a door. Although he admitted causing her injuries, Riley denied hitting M.W. with a stick. Indeed, he testified that he did not pick up the tree branch until K.W. came outside. Fearing reprisal, Riley threw the tree branch at the front door and then grabbed a knife laying near a potted plant.

¶11        When asked whether he believed that M.W. was threatening him with the prongs or simply being playful, Riley testified that he was

unsure, but took it seriously. He asserted that M.W. had provoked him and he instinctively hit her because he felt threatened.

¶12 After a four-day trial, a jury acquitted Riley of Count 2 and convicted him of the remaining charges. The trial court sentenced Riley to ten years' imprisonment on Count 1 and time served on Count 3. Riley timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1),[3] 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Failure to Provide a Limiting Instruction

¶13 Riley contends the trial court erred by failing to instruct the jurors that they could consider his statements to the officer, and any attendant omissions, only to evaluate his credibility not to assess his guilt. Because Riley failed to request a limiting instruction at trial, we review this claim only for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). To establish fundamental error, a defendant must show the trial court erred and that such error: (1) went to the foundation of the case; (2) took from the defendant a right essential to his defense; or (3) was so egregious that he could not possibly have received a fair trial. *Id*. at 142, ¶ 21 (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 26 (2005)). "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice." *Id*.

¶14 Even if Riley proved error, he has failed to demonstrate any prejudice. Even without a limiting instruction, the evidentiary value of Riley's statements to the officer pertained only to Riley's credibility. Stated differently, Riley did not make any inculpatory statements to the arresting officer, so the statements did not provide affirmative evidence of his guilt. Indeed, the prosecutor used the statements only to attack Riley's credibility and argue that his self-defense claim was not believable. Therefore, because nothing in the record suggests the jurors may have regarded the challenged statements as evidence of guilt, Riley has failed to meet his burden on fundamental error review. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (stating a defendant must "affirmatively prove prejudice and may not rely upon speculation to carry his burden" under fundamental error review) (internal quotation omitted).

---

[3] Absent material changes from the relevant date, we cite the current version of rules and statutes.

## II.     Admission of Other-Act Evidence

¶15        Riley contends the trial court improperly admitted other-act evidence.  Specifically, Riley argues evidence that he had trespassed upon M.W.'s property the day before the underlying events was inadmissible because: (1) the State failed to establish by clear and convincing evidence that he had committed trespass; (2) it was irrelevant; and (3) it was unfairly prejudicial.

¶16        At trial, M.W.'s 9-1-1 call was played for the jury and admitted without objection.  During that brief call, M.W. informed the emergency operator that Riley had been "trespassed from" her home.  The phrase "trespassed from" was not clarified at trial, but during cross-examination, Riley admitted that he "did get charged with trespassing" upon M.W.'s residence but then claimed that "the judge didn't tell [him] not to go back."   After the prosecutor asked two additional questions confirming that Riley had been charged with trespass, defense counsel objected, citing Arizona Rule of Evidence (Rule) 404.  Without discussion, the trial court overruled the objection, and Riley again confirmed he had been charged with trespassing at M.W.'s house.

¶17        During closing argument, the prosecutor referenced Riley's admitted trespass charge and argued that even if M.W. verbally provoked him, he had "a duty to retreat" because he was "not in a place where he ha[d] a legal right to be."  Defense counsel objected, and after an extended bench conference, the trial court sustained the objection and struck the prosecutor's statement that Riley had a duty to retreat.  When argument resumed, the prosecutor reminded the jurors that M.W. had told the emergency operator that Riley had been "trespassed from" her home.  In response, defense counsel acknowledged M.W.'s statements in the 9-1-1 call but argued M.W. had invited Riley to her residence on the day of the incident so he was a lawful guest in her home.

¶18        We review a trial court's evidentiary ruling for an abuse of discretion.  *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006) (citing *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003)).  Rule 404 governs the admission of character and "other act" evidence and prohibits evidence of other crimes, wrongs, or acts to prove a person's character to act in a certain way, but allows such evidence for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Ariz. R. Evid. 404(b).  Before admitting other-act evidence, a court must find: (1) there is clear and convincing evidence the defendant committed the other act; (2)  the evidence is relevant

under Rule 402; (3) the evidence is offered for a proper purpose under Rule 404(b); and (4) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403. *State v. Terrazas*, 189 Ariz. 580, 584 (1997); *State v. Mott*, 187 Ariz. 536, 545 (1997).

**¶19** At trial, M.W. testified that she had no recollection of Riley hitting her and he was welcome in her home on the day in question. Arguably, evidence that Riley had trespassed M.W.'s home only the day before the underlying events was relevant to impeach M.W.'s testimony and to show Riley's motive or intent. *See State v. Hardy*, 230 Ariz. 281, 289, ¶ 38 (2012) ("Evidence of [a] prior argument with . . . a victim is. . . admissible to show motive or intent."). Given Riley's trial testimony that he intentionally hit M.W. and caused her injuries, however, only two questions remained for the jury: (1) whether Riley struck the victim with a tree branch; and (2) whether Riley hit the victim in self-defense. Thus, Riley's express admission that he assaulted M.W. rendered other evidence of their turbulent relationship only minimally relevant and probative.

**¶20** Nonetheless, even assuming the trial court erred by failing to strike the prosecutor's cross-examination of Riley regarding the trespass, such error would be harmless. *State v. Green*, 200 Ariz. 496, 501, ¶ 21 (2001) ("Error is harmless only if we can say, beyond a reasonable doubt, that it 'did not contribute to or affect the verdict.'") (quoting *State v. Bible*, 175 Ariz. 549, 588 (1993)). No details regarding the trespass were introduced and no evidence suggested that the trespass involved violence. *See State v. Lee*, 189 Ariz. 590, 599-600 (1997) (explaining unfair prejudice results only when "the evidence has an undue tendency to suggest decision on an improper basis") (citing *Mott*, 187 Ariz. at 545-46). Although Riley argues the trespass evidence may have led the jurors to assume he was "a bad person prone to criminal behavior," the jury's acquittal on Count 2 demonstrates that the jurors carefully considered the evidence and belies any claim that they may have simply convicted Riley based upon his prior trespass. *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (noting the jurors' decision to acquit the defendant of certain charges "demonstrate[d] the jury's careful and proper consideration of the evidence"). Furthermore, Riley did not move to suppress M.W.'s 9-1-1 call statement or otherwise object to its admission. Indeed, he admitted on direct examination that he had argued with M.W. the day before the assault. Accordingly, his admissions regarding the trespass charge were entirely cumulative to other evidence, and therefore harmless. *See State v. Weatherbee*, 158 Ariz. 303, 305 (App. 1988) (explaining the erroneous admission of evidence is harmless when the improperly admitted evidence is "entirely cumulative") (citing *State v. Williams*, 133 Ariz. 220, 226 (1982)).

### III.    Admission of Hearsay Evidence

¶21        Riley contends the trial court improperly permitted an investigating sergeant to testify regarding statements a guest made, arguing such evidence was hearsay.

¶22        At trial, a sergeant testified that she responded to M.W.'s residence the night of the assault and interviewed one of M.W.'s guests, E.T. As recounted by the sergeant, over objection, E.T. reported that the victim "had been struck with a stick."

¶23        We review a trial court's evidentiary rulings for an abuse of discretion. *Ellison*, 213 Ariz. at 129, ¶ 42. In general, an out-of-court statement offered to prove the truth of the matter asserted is inadmissible. Ariz. R. Evid. 801(c), 802.

¶24        Although the State argues E.T.'s statement was not presented for its truth but to explain why the sergeant "retrieved the tree branch and placed it in evidence," the sergeant did not need to recount E.T.'s statement to explain why she believed a large tree branch located near M.W.'s front door may have had evidentiary value. Nonetheless, in light of the other evidence admitted at trial, the admission of this hearsay evidence was harmless.

¶25        As a preliminary matter, E.T. testified at trial and was subjected to cross-examination. Therefore, his statements, as recounted by the sergeant, were not barred by the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 53 n.4, 59 (2004) (explaining testimonial hearsay, which includes statements given in response to formal police questioning, is barred by the Confrontation Clause when the declarant does not appear at trial). Second, E.T.'s out-of-court statements were cumulative to other evidence. Without objection, the State introduced: (1) M.W.'s 9-1-1 call statement claiming Riley hit her with a tree branch; (2) M.W.'s trial testimony that she was hit with a tree branch (albeit she did not recall by whom); (3) M.W.'s statement, recounted by K.W., that Riley had hit her with a tree branch; and (4) M.W.'s statement to medical personnel that her boyfriend's brother had hit her with a tree branch. Given this additional, substantial evidence that M.W. was hit with a stick, the erroneous admission of E.T.'s hearsay statement was necessarily harmless.

**CONCLUSION**

¶26      Riley's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA